**UNITED STATES**

v.

**Airman Basic Robert A. MOYER, FR 206–52–7522. United States Air Force.**

**ACM S25031.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 18 June 1980.

Decided 17 April 1981.

Before POWELL, KASTL and MAHONEY, Appellate Military Judges.

DECISION

MAHONEY, Judge:

This case presents another encounter between an absentee and a recruiter. The accused pled guilty to an absence without leave (AWOL) occurring on 7 December 1978, and to thereafter remaining continually absent for over 17 months. In relating the facts of the offense to the judge, the accused stated that within 30 days of absenting himself he went to an Armed Forces Recruiting Center and informed an Air Force recruiter that he was AWOL from the Air Force. His stated purpose in so doing was to find out the consequences of his unauthorized absence, and he made no attempt to surrender to the recruiter. For his part, the recruiter made no attempt to physically apprehend the accused, nor to direct his actions. Instead, he merely advised the accused to turn himself in. The accused departed the recruiting center, and delayed following the recruiter's advice for about 16 months.*

---

\* The relevant portion of the colloquy between the accused and the military judge is quoted below:

MJ: You remained away until 29 May 1980, is that correct?
ACC: Yes, sir.
MJ: Did you ever go by a recruiting office or military office of any sort?

ACC: Yes, sir. I had contact with a recruiting office in Reading.
MJ: When did you do that?
ACC: I don't remember the exact date, sir.
MJ: Well, was it in 1978?
ACC: Yes, sir. Possibly in the beginning of 1979.

The events which transpired at the recruiting office have no bearing upon the providency of the accused's plea of guilty to the unauthorized absence offense, which was complete on 7 December 1978. *United States v. Emerson*, 1 U.S.C.M.A. 43, 1 C.M.R. 43 (1951). Our concern is the *duration* of the absence to which the accused pled guilty. While not an element of the offense, the duration of the absence is an aggravating circumstance which, when properly pleaded and proved, may authorize a greater maximum punishment. *United States v. Lovell*, 7 U.S.C.M.A. 445, 22 C.M.R. 235 (1956). In this case, if the encounter between the accused and the recruiter resulted in a return to military control, the AWOL offense of which the accused stands convicted would not authorize the approved bad conduct discharge.

The legal principles relevant to our determination were well summarized by Senior Judge Jones in a recent decision of the Army Court of Military Review:

It has long been a principle of military law that an unauthorized absence may be terminated by any proper exercise of military control over an absentee. *United States v. Jackson*, 1 U.S.C.M.A. 190, 2 C.M.R. 96 (1952). For a voluntary termination initiated by the absentee to become effective, several factors must be present.

First, the absentee must present himself to competent military authority with the intention of returning to military

duty. *United States v. Jackson, supra; United States v. Rayle*, 6 M.J. 836 (NCMR 1979); *United States v. Self*, 35 C.M.R. 557 (ABR 1965). He must present himself personally, a phone call being insufficient, *United States v. Acemoglu*, 21 U.S.C.M.A. 561, 45 C.M.R. 335 (1972), but he need not report to a military installation; a recruiting office and a selective service office being sufficient for the purpose. *United States v. Kitchen*, 5 U.S.C.M.A. 541, 18 C.M.R. 165 (1955); *United States v. Raymo*, 1 M.J. 31 (CMA 1975). Even a return to a military reservation does not automatically result in a termination as an absentee's casual presence on an installation for his own private purpose will not satisfy this requirement. *United States v. Jackson, supra; United States v. Self, supra*. Additionally, the competent military authority to whom the absentee must present himself must be someone with authority to apprehend, *e. g.*, a commissioned officer, *United States v. Raymo, supra* ; a noncommissioned officer *United States v. Kitchen, supra*; a military policeman, *see United States v. Reeder*, 22 U.S.C.M.A. 11, 46 C.M.R. 11 (1972). *See* paragraph 19*a*, Manual for Courts Martial, United States, 1969 (Revised edition).

The second requirement that must be present for the termination of an absence is that the absentee *must identify himself properly and must disclose his status as an absentee. United States v. Raymo,*

MJ: What was your purpose in going by to see them?
ACC: To find out what charges I'd be facing or the problems I might have when I came back.
MJ: *Did you tell them you were AWOL?*
ACC: Yes, sir.
MJ: What did they say to you then?
ACC: "I suggest you turn yourself in."
MJ: What did you do?
ACC: I took it into my own hands and looked at it from my point of view and decided that I didn't want to return at that time.
MJ: Where did this take place?
ACC: In the recruiting office in Reading, Pennsylvania.
MJ: Where is it located? What building?
ACC: I believe it's just the Recruiting Center.
MJ: It's not in the post office or anything?
ACC: No, sir.

MJ: So you went and told them you were AWOL?
ACC: Yes, sir.
MJ: Did you ask them for any assistance that *is in terms of transportation or . . . . .*
ACC: No, sir, I just asked them what they suggested I should do and they said "We suggest you turn yourself in."
MJ: You didn't ask them for any help of any kind at that time?
ACC: No sir, just advice.
MJ: Just advice?
ACC: Yes.
MJ: Did they offer you transportation back?
ACC: No, sir. After I asked them my question, he answered me and I said "Thank you" and left.
MJ: You walked out?
ACC: Yes, sir.

supra; *United States v. Jackson, supra; United States v. Rayle, supra.* Both identity as a member of the military and status as an absentee must be divulged. Furnishing information on the former while at the same time concealing, misrepresenting or even remaining silent on the latter would not suffice to supply the requisite degree of knowledge.

An exception to this requirement that the absentee must affirmatively divulge his identity and status would be in those situations where the competent military authority was already aware of the absentee's status or, having a duty to inquire, could have determined the status by reasonable diligence. *United States v. Jackson, supra; United States v. Rayle, supra.*

The final necessary requirement for the termination of an absence is that the military authority, with full knowledge of the individual's status as an absentee, exercises control over him. *United States v. Raymo, supra.* The measure of military control exercised may be as seemingly unimportant as referring the absentee to some other individual to solve his problem. Again an exception would occur if the military authority declined to exercise control over the absentee or was slow in the exercise of such control. In that event, the Government would not be permitted to deny a termination of absence because of the failure to exercise control. *United States v. Jackson, supra; United States v. Rayle, supra* [footnote omitted].

*United States v. Coglin,* 10 M.J. 670, 672–673 (ACMR 1981).

 Applying the foregoing law to the facts related by the accused, it is clear that although he presented himself to the recruiter, presumably an NCO authorized to apprehend, and disclosed his status as an absentee from the Air Force, the accused did not intend to, and did not in fact surrender. *United States v. Loper,* 25 C.M.R. 778 (AFBR 1957). It follows that the recruiter did not refuse to accept a reasonable at-tempt to surrender by the accused; nor did he attempt to exercise or actually exercise military control over the accused. *United States v. Kitchen, supra; United States v. Kaetzel,* 48 CMR 58 (AFCMR 1973); *United States v. Loper, supra.* In short, as a matter of law, the accused's encounter with the recruiter did not effect a return to military control, and his plea of guilty to the entire period of charged AWOL was provident.

The findings of guilty and the sentence are correct in fact and law and, on the basis of the entire record, are

AFFIRMED.

POWELL, Senior Judge, and KASTL, Judge, concur.