**UNITED STATES**

v.

**Donald P. PETTIS, 482 74 2219, Lance Corporal (E–3), U. S. Marine Corps.**

**NMCM 80 2695.**

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 21 March 1980.

Decided 22 Oct. 1981.

LT Lynn M. Maynard, JAGC, USN, Appellate Defense Counsel.

LCDR John C. Vinson, JAGC, USN, Appellate Government Counsel.

Before BAUM, ABERNATHY and KERCHEVAL, JJ.

KERCHEVAL, Judge:

Appellant, pursuant to his guilty pleas, was convicted at a special court-martial, military judge alone, of two unauthorized absences in violation of Article 86, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 886. The sentence adjudged at trial consisted of confinement at hard labor for 45 days, forfeiture of $150.00 per month for 2 months, reduction to pay grade E–1, and a bad-conduct discharge. The convening and supervisory authorities approved the sentence.

The following assignments of error have been asserted for our consideration:

I

THE APPELLANT'S PLEA TO SPECIFICATION 3 OF CHARGE II WAS IMPROVIDENT DUE TO THE FAILURE OF THE MILITARY JUDGE TO INQUIRE INTO A POSSIBLE EARLY TERMINATION OF THE UNAUTHORIZED ABSENCE WHEN APPELLANT CONTACTED A RECRUITER (R. 25). PARAGRAPH 164A, *MANUAL FOR*

COURTS–MARTIAL, 1969 (REV.); UNITED STATES V. CARE, 18 U.S.C. M.A. 535, 40 C.M.R. 247 (1969); BUPERSMAN 3430100.

## II

THE APPELLANT'S PLEA OF GUILTY TO SPECIFICATION 2 OF CHARGE II WAS IMPROVIDENT DUE TO THE FAILURE OF THE MILITARY JUDGE TO REOPEN THE PROVIDENCY INQUIRY AND TO INQUIRE INTO MATTERS RAISED IN APPELLANT'S SWORN TESTIMONY.

A. The Plea Was Improvident Due To The Failure Of The Military Judge To Inquire Into A Possible Pretrial Agreement.

B. The Appellant's Plea Was Improvident Due To The Failure Of The Military Judge To Inquire Into The Possibility That The Appellant's Absence Had Been *With* Authority.

C. The Military Judge Erred When He Failed To Inquire Into The Possibility That The Unauthorized Absence Had Been Constructively Condoned.

## I

Specification 3 of Charge II alleged that appellant remained in the status of an unauthorized absentee from 18 September 1979 to 12 January 1980. During the providence inquiry at his court-martial appellant stated that sometime before Christmas of 1979 he telephoned the officer-in-charge [OIC] of his unit, indicating his desire to surrender to military authorities. The OIC instructed him to contact a recruiter. Appellant telephoned a recruiter who advised him to seek assistance from a reserve station located near appellant's home. Contrary to this advice, appellant failed to contact the reserve station.

 The military judge had no reason to inquire into the possibility of an early termination of the unauthorized absence for the statements by appellant clearly did not raise the issue. The termination of an unauthorized absence is effected either by the exercise of military control over the absentee, *see e. g., United States v. Jackson*, 1 U.S.C.M.A. 190, 2 C.M.R. 96 (1952); *United States v. Rayle*, 6 M.J. 836 (N.C.M.R.1979), or by constructive termination of the absence. *See, e. g., United States v. Reeder*, 22 U.S.C.M.A. 11, 46 C.M.R. 11 (1972); *United States v. Sandell*, 9 M.J. 798 (N.C.M. R.1980). An unauthorized absence is constructively terminated "when an absentee presents himself to military authorities with full intention of returning to duty, even when no control is exercised by military authorities...." *Id.* at 799; *Rayle* at 838. Not only was it obvious that no military control was exercised over appellant, but his statements in no way implied that he intended to return to duty, thus there was no evidence of any constructive termination that might have given the military judge reason to further inquire into this matter. In *Sandell*, we were presented with a fact situation similar to that found in this case except that there, on the recruiter's advice, the accused made the additional effort to go to the reserve center in order to get assistance in his efforts to surrender. He became frightened, however, and left without presenting himself to anyone. *Id.* at 799. There, we rejected the accused's claim of constructive termination, for his efforts amounted to an incomplete submission to military control. *Id.* at 800.

## II

In his second assignment of error, appellant contends that his plea of guilty to Charge II, specification 2, was improvident. Appellant bases this contention on three theories derived from his sworn testimony during the presentencing phase at trial. Appellant alleged in this testimony that, while he was an unauthorized absentee, the OIC of his unit promised him that he would drop this specification if appellant exonerated himself from a prior larceny charge by successfully completing a polygraph test.

 Appellant first argues that the plea was improvident because the military judge failed to inquire into the possibility of a pretrial agreement after hearing appel-

lant's testimony. As appellant concedes, trial defense counsel, in response to a direct question by the military judge, denied the existence of any pretrial agreement. (R.27). Furthermore, appellant's sworn statement in no way implied the existence of a pretrial agreement, but merely alleged that he entered into an understanding with the OIC of his unit. We reject the idea that this understanding affected appellant's decision to plead guilty to the offense. *Cf., United States v. Caruth*, 6 M.J. 184 (C.M.A. 1979) (where the Court found that an understanding reached between the military judge and defense counsel on sentencing philosophy did not render accused's guilty pleas involuntary; and where the judge's failure to make timely inquiry into the existence of a pre-trial agreement did not require reversal on review of the accused's conviction).

Secondly, appellant would have us believe that the promises made by the OIC implicitly gave appellant the authority to remain an unauthorized absentee. We reject this argument. At most the statements can be interpreted as providing appellant with a means of escaping punishment upon his return to military control. The military judge, therefore, had no reason to inquire into whether appellant's absence had been "with authority."

Appellant's final theory on the improvidence of his plea relies upon the applicability to his case of the doctrine of constructive condonation. This defense is established by paragraph 68f, *Manual for Courts-Martial*, 1969 (Rev.) (MCM), which provides as follows:

Constructive condonation of desertion. If an officer exercising general court-martial jurisdiction unconditionally restores a deserter to duty without trial with knowledge of the alleged desertion, this action amounts to a constructive condonation of the desertion and may be interposed in bar of trial subsequently ordered. If an officer exercising general court-martial jurisdiction has directed that a deserter be restored to duty but that he remain subject to trial for the

offense, such a restoration is not a constructive condonation of the desertion and the individual so restored remains subject to trial.

The statements made by appellant concerning the alleged promise by the OIC of his unit did not impose upon the military judge the duty to inquire into whether the unauthorized absence was constructively condoned because as we interpret paragraph 68f, MCM, its applicability is limited to the offense of desertion. We derive this interpretation in part from the language of paragraph 68f, MCM, itself, which discusses the defense solely in terms of "desertion" and "deserter," making no reference to "unauthorized absence" or any other offense. The Court of Military Appeals similarly interpreted this provision when it was presented with this issue in *United States v. Minor*, 1 U.S.C.M.A. 497, 4 C.M.R. 89 (1952). Although not reaching a holding on the issue, the Court stated:

Examination of [paragraph 68f, MCM,] discloses that the doctrine of constructive condonation is limited in its application to the offense of desertion and military cases have never extended the doctrine. Counsel for the accused concedes the limitation but seek to have this Court enlarge the application of the principle to cover other offenses, particularly absence without leave. The principal reason assigned for broadening the rule is that the latter offense is an included offense of the crime of desertion and if the greater can be condoned, the lesser ought to be subject to the same consideration. While the argument is not without merit it is extremely doubtful that this Court could, without legislative sanction, broaden the defense so as to bar the prosecution of other offenses.

*Id.* at 498–99, 4 C.M.R. at 90–91.

Even if we were to extend the doctrine of constructive condonation to the offense of unauthorized absence, the record of trial reflects that the elements of the defense were not established. "The record must show the following conditions: (1) an unconditional restoration to duty, (2) by an

officer exercising general court-martial jurisdiction, and (3) with knowledge on his part of the alleged desertion." *United States v. Scott*, 6 U.S.C.M.A. 650, 654, 20 C.M.R. 366, 370 (1956). In this case appellant was not unconditionally restored to duty for upon his return he was processed for an administrative discharge. Furthermore, the OIC who allegedly condoned appellant's unauthorized absence did not have the requisite general court-martial jurisdiction.

Accordingly, we find appellant's pleas to have been provident and the findings and sentence as approved on review below are affirmed.

Senior Judge BAUM and Judge ABERNATHY concur.